IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GARY CARL CREMEENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 2:09cv409-WHA |
| | ) | (WO) |
| THE CITY OF MONTGOMERY, | ) | |
| ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by Defendant City of Montgomery on May 21, 2010. (Doc. #13.)  Plaintiff Gary Cremeens, a former employee of the City of Montgomery Fire Department, alleges in the Complaint that the City violated the Americans with Disabilities Act when it stopped accommodating his heart condition and removed him from his job as Fire Investigator.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

### II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III.  FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

2

Plaintiff Gary Cremeens ("Cremeens") worked off and on for the Defendant City of Montgomery Fire Department ("the City") from 1984 through 2008.  In 2002, the City promoted Cremeens to the position of Fire Investigator.[1]

The Fire Investigator position requires an employee to perform a variety of duties.  Most of a Fire Investigator's duties are law enforcement duties that do not involve the routine fighting of fires.  These duties include investigating the cause and origin of fires, developing case files for those fires determined to be criminal in origin, interviewing witnesses, making arrests for fire or explosion-related crimes, and making night club inspections.  The City has admitted that fire suppression services are not the "primary focus" of a Fire Investigator's job.  (Doc. #14, Def. Br. 14-15.)  At the same time, Fire Investigators are required to obtain the same basic fire suppression training as all firefighters in the department, including those members of the Suppression Division.  Fire Investigators also are required to carry the exact same gear that any firefighter in the Suppression Division carries.  This gear includes a fire helmet, nomex hood, coat, pants, boots, gloves, wrench, and breathing apparatus.  Moreover, it is undisputed that Fire Investigators are subject to being directed to engage in fire suppression activities by either a superior officer or an on-scene commander and would be disciplined if they failed to comply with such direction.  It is also undisputed that Fire Investigators must engage in suppression activities without being ordered to do so in emergency situations, such as when other firefighters are in danger, or where civilian lives are in danger and suppression units are not on the scene. Some Fire Investigators have had to perform these duties in the past.  Cecil Guthrie, a Fire

---

[1]  The parties use the terms "Fire Investigator" and "Arson Investigator" interchangeably. For the sake of clarity, the court uses only the term "Fire Investigator."

Investigator, engaged in fire suppression activities on May 5, 2010, and Joe Champion, a former

Fire Investigator, engaged in suppression activities on a couple of occasions.  Cremeens,

however, was never required to engage in fire suppression activities during his service as Fire

Investigator.

In November 2004, Cremeens was diagnosed with a heart condition called

cardiomyopathy.  Cardiomyopathy involves an enlargement of a portion of the heart that results

in the muscle not pumping as efficiently as it should.  Due to his cardiomyopathy, Cremeens

missed approximately two weeks from work while having a cardio-defibrillator implanted.

Following the surgery, Cremeens' doctor directed that he could return to performing the duties of

a Fire Investigator, but Cremeens could not actually fight fire because it would be too much of a

strain on his heart.

When Cremeens returned to work after his surgery, he presented the City with a letter

documenting his doctor's restriction applicable to fighting fire.  Former Fire Chief John McKee

sent Cremeens to the City's doctor for a fit-for-duty evaluation on December 14, 2004.  The fit-

for-duty evaluation is based on the guidelines of the National Fire Protection Association

("NFPA") Standard 1582, Standard on Medical Requirements for Fire Fighters.  The evaluation

concluded that, due to his cardiomyopathy, Cremeens was not physically fit for firefighting

duties. (Doc. #14-5, 2004 Fit-For-Duty Eval. 1, 6.)

Although the fit-for-duty evaluation disqualified Cremeens from engaging in fire

suppression activities, Cremeens was allowed to remain in his position as Fire Investigator.  This

decision to accommodate Cremeens was apparently made by John McKee, who was the Fire

Chief in 2004.  For just over three years – from December 14, 2004 until the time of his transfer

4

on January 8, 2008 – Cremeens successfully executed his duties as Fire Investigator.  At no time was he called on to actually fight any fires.

Sometime in 2006, Mifford Jordan replaced John McKee as Fire Chief.  According to Chief Jordan, sometime in 2007, he heard from Deputy Chief Addie or Assistant Chief Davis that Cremeens had expressed an intention to retire in October 2007.  According to Cremeens' version of events, which the court assumes to be true, Chief Jordan did not have any credible evidence establishing that Cremeens intended to retire.  In particular, Cremeens had not initiated any formal procedure for retirement, which includes setting a retirement date; Cremeens' supervisor, Assistant Chief Davis, testified that Cremeens never told him he was planning on retiring on a certain date; Assistant Chief Davis testified that he never told Chief Jordan that Cremeens had planned to retire; Cremeens testified that he did not tell Chief Jordan that he planned on retiring; Chief Jordan testified that he did not ask Cremeens whether he planned on retiring; and Chief Jordan testified that he did not ask anyone to verify that Cremeens was in fact retiring.  (*See* Doc. #16, Plf. Br. 6 n.5.)

Despite the uncertainty surrounding Cremeens' potential retirement, Chief Jordan sent a replacement for Cremeens to the Montgomery Police Academy to receive training in October of 2007.  Chief Jordan has testified  that he sent for Cremeens' replacement at that time so the individual would have enough time to complete the necessary training.  The Montgomery Police Academy takes approximately twelve weeks to complete, and Chief Jordan was concerned that, if Cremeens' replacement did not enroll in the class starting in October 2007, then there might not be another class convened for six or seven months.

Cremeens' replacement was scheduled to graduate from the academy during the first

week of January 2008.  At that time, Cremeens had not retired.  Chief Jordan was concerned that Cremeens' replacement, whom the City had expended approximately twelve to thirteen thousand dollars training, would lose his certification if he were not placed in the Investigative Division.  Apparently, the Alabama Peace Officers Standards Training Commission (APOST) requires that officers be actively engaged in law enforcement to maintain their certification, and only those members in the Investigative Division are actively engaged in law enforcement activities.  As a result, Chief Jordan began the process of transferring Cremeens from the Investigative Division to the Fire Suppression Division.  On January 7, 2008, Assistant Chief Davis notified Cremeens of his transfer, and Cremeens asked to meet with Chief Jordan that same day.  At that meeting, Chief Jordan told Cremeens that he was being transferred to the Fire Suppression Division because Chief Jordan thought that Cremeens was retiring and a replacement was already trained and ready to start in the Investigative Division.  Cremeens objected to the transfer, stating that he could not work in the Fire Suppression Division due to his cardiomyopathy, and he requested to remain in the Fire Investigator job.  Chief Jordan decided not to transfer Cremeens to the Suppression Division, but to transfer him temporarily to the Training Division and send him for another fit-for-duty evaluation.

The results of the fit-for-duty evaluation were consistent with the 2004 evaluation, and generally indicated that Cremeens could not perform any duties associated with fire suppression or rescue operations.  (Doc. #14-8, 2008 Fit-For-Duty Eval.)  Consequently, the City informed Cremeens that he would have to retire because there were not any jobs for him.  He was informed his separation date would be May 23, 2008, and he subsequently applied for retirement.

**IV. <u>DISCUSSION</u>**

6

**A.  Cremeens' failure-to-accommodate claim under 42 U.S.C. § 12112(a)**

The Americans With Disabilities Act ("ADA") provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a). Under the controlling law in this Circuit, "[t]he burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims."  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007) (citation omitted).  "A plaintiff advancing a claim of employment discrimination under the ADA must make a prima facie case establishing that (1) he has a disability, (2) he is a 'qualified individual,' which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against him because of the disability."  *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000).  "[T]he burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable."  *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998) (citing  *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997). The dispositive issue raised by the City's Motion for Summary Judgment is whether Cremeens has established prong two of his prima facie case, that is, whether he is a "qualified individual."

A "qualified individual" under the ADA is someone with a disability who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Holly*, 492 F.3d at 1256 (citing 42 U.S.C. §

12111(8)).  "Accordingly, an ADA plaintiff must show either that he can perform the essential

functions of his job without accommodation, or, failing that, . . . that he can perform the essential

functions of his job with a reasonable accommodation." *Id.* (citing *D'Angelo v. ConAgra Foods,*

*Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005) (quotation marks omitted).  "An accommodation is

'reasonable' and necessary under the ADA, in turn, only if it enables the employee to perform the

essential functions of the job."  *Id.*; *see also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249,

1259-60 (11th Cir. 2001);  *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir.

1998).  "If the individual is unable to perform an essential function of his job, even with an

accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered

under the ADA.  In other words, the ADA does not require the employer to eliminate an essential

function of the plaintiff's job." *D'Angelo*, 422 F.3d at 1229 (quotation marks and alterations

omitted).  On the other hand, "the ADA may require an employer to restructure a particular job

by altering or eliminating some of its *marginal functions*."  *Lucas*, 257 F.3d at 1260 (emphasis

added).

Cremeens does not dispute that he cannot perform the function of fighting fires due to his

cardiomyopathy.  He contends, however, that the ADA requires the City to accommodate him by

leaving him in the Fire Investigator position and not requiring him to fight fires.  Because an

ADA plaintiff must establish that he can perform the essential functions of his job with or

without accommodation, and the ADA does not require an employer to eliminate an essential job

function, the central issue in this case is whether firefighting is an essential function of the Fire

Investigator position.  If firefighting is an essential function of the Fire Investigator position, then

Cremeens cannot perform this function "with or without reasonable accommodation," and he is

8

therefore not a "qualified individual" under the ADA, and his failure-to-accommodate claim

must fail.[2]

The term "essential functions" "means the fundamental job duties of the employment

position the individual with a disability holds or desires," and "does not include the marginal

functions of the position." *D'Angelo v. ConAgra Foods Inc.*, 422 F.3d 1220, 1230 (11th Cir.

2005) (citing 29 C.F.R. § 1630.2(n)(1)) (internal quotation marks omitted). "Whether a function

is essential is evaluated on a case-by-case basis by examining a number of factors." *Davis v. Fla.*

*Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). In making this determination, the

statute provides, "'consideration shall be given to the employer's judgment as to what functions

of a job are essential, and if an employer has prepared a written description before advertising or

interviewing applicants for the job, this description shall be considered evidence of the essential

functions of the job.'" *D'Angelo*, 422 F.3d at 1230 (citing 42 U.S.C. § 12111(8)); *see also*

*Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir. 1997). "The ADA regulations

provide that other factors to consider are: (1) the amount of time spent on the job performing the

function, (2) the consequences of not requiring the incumbent to perform the function, (3) the

---

[2] The City also contends that Cremeens' proposed accommodation – leaving him in the position of Fire Investigator and not requiring him to fight fires – poses an "undue hardship" on the City and poses a "direct threat" to the citizens of Montgomery, other firefighters, or Cremeens himself. The "direct threat" defense and the "undue hardship" defense only arise after the plaintiff has stated a prima facie case. *See Terrell*, 132 F.3d at 624 (noting that plaintiff must first meet prima facie burden before the defendant has to show that an accommodation poses an undue hardship); *Koshinski v. Decatur Foundry, Inc.*, 177 F.3d 599, 602 (7th Cir. 1999) (noting that "the 'direct threat' issue arises [ ] only after an ADA plaintiff has made out a prima facie case, as an employer's defense to the challenged adverse employment decision."). Because the court finds that Cremeens has failed to show he can perform the essential function of fighting a fire and has thus failed to state a prima facie case, the court does not address the City's other arguments.

terms of the collective bargaining agreement, (4) the work experience of past incumbents in the job, and (5) the current work experience of incumbents in similar jobs." *Davis*, 205 F.3d at 1305 (citing 29 C.F.R. § 1630.2(n)(3)).

These regulations also identify three (nonexclusive) bases on which a job function may be deemed essential: "(1) the reason the position exists is to perform the function; (2) there are a limited number of employees available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function." *Holbrook*, 112 F.3d at 1526 (citing 29 C.F.R. § 1630.2(n)(2)).

Several of these factors have little or no bearing on this case. The record contains no evidence concerning the terms of a collective bargaining agreement, or the number of employees who work at the City of Montgomery Fire Department and are available to fight fire. In addition, while the Fire Investigator position does not exist solely to fight fires, it is undisputed that Fire Investigators are called on to fight fires in certain situations.

Based on the other factors, however, Cremeens has failed to show that fighting fires, a function he admittedly cannot perfrom, is a non-essential function of the Fire Investigator position. First, the City considers fire suppression activities to be an essential function of the Fire Investigator position. Assistant Chief Davis, the division chief of the Fire Investigation Division, has testified that Fire Investigators are subject to being directed to engage in fire suppression activities by either a superior officer or an on-scene fire commander and would be disciplined if they failed to comply with such direction. Assistant Chief Davis has also testified that Fire Investigators have a responsibility to engage in fire suppression activities without being

10

ordered to do so in emergency situations where the lives of other firefighters or civilians may be in danger.[3]  Second, the consequences of not requiring Cremeens to perform fire suppression services could be severe.  Cremeens' inability to provide fire suppression services in emergency situations could result in the unnecessary loss of life.   Third, fire suppression is a highly specialized function, and Cremeens was specifically trained and equipped to be able to provide suppression services.  Fourth, the recent work experience of Fire Investigators indicates that fire suppression is an essential function of the Fire Investigator position.  Cecil Guthrie, a Fire Investigator, and Joe Champion, a former Fire Investigator, both were required to engage in fire suppression services in the recent past.

Cremeens has submitted the following evidence to show that fighting fire is not an essential function of the Fire Investigator position:  (1)  Chief Jordan conceded in Cremeens' worker's compensation trial that a Fire Investigator does not routinely fight fire; (2)  Assistant

---

[3]  The undisputed fact that Cremeens may be called on to fight a fire helps to distinguish this case from *Hamlin v. Charter Township of Flint*, 165 F.3d 426 (6th Cir. 1999) and *Stone v. City of Mt. Vernon*, 118 F.3d 92 (2d Cir. 1997), two non-binding cases holding that plaintiff created an issue of fact as to whether firefighting was an essential function of the particular job at issue.  Unlike this case, those cases concerned evidence that the plaintiff would not be called on to engage in firefighting.  *See Hamlin*, 165 F.3d at 429-30 (stating that Assistant Fire Chief's role at scene of emergency would not include firefighting but rather supervisory activities, equipment-gathering, and safety compliance); *Stone*, 118 F.3d at 99-100 (stating that firefighters assigned to plaintiff's division had not been called upon to fight fires but rather fire department's standard practice was to obtain assistance from fire companies in neighboring towns).

The undisputed fact that Cremeens may be called on to fight a fire brings this case more in line with *Burch v. City of Nacogdoches*, 174 F.3d 615 (5th Cir. 1999) and *Serrano v. County of Arlington*, 986 F. Supp. 992 (E.D. Va. 1997).  *See Burch*, 174 F.3d at 621 (concluding that the fighting of fires was an essential function of plaintiff's job because City's policy expected all firefighters to fight fires); *Serrano*, 986 F. Supp. at 1000 (concluding that strenuous lifting activities and rescue services were essential functions of firefighter's job based on the job description, past experience of those in the position, and the grave consequences of not requiring plaintiff to perform rescue services).

Chief Davis testified that the performance of fire suppression, while an expected duty, is not part of the job description of a Fire Investigator; (3) the City conceded in a previous Fair Labor Standards action that fighting fires is not the ordinary job of Fire Investigators, and that the number of occasions on which Fire Investigators have engaged in fire suppression is limited; (4) the City has asserted in other proceedings that Cremeens was a "law enforcement" officer in an effort to benefit from the immunity provided governmental agencies for state law tort claims arising out of discretionary functions; (5) Cremeens worked as a Fire Investigator for over three years, even though the City had determined that he was unfit for the duties relating to fighting fire, and during that time Cremeens never had to fight a fire. (Doc. #16, Plf. Br. 4 n.3.) Based on this evidence, Cremeens argues that fire suppression is not an essential function of the Fire Investigator position because the situations requiring Fire Investigators to engage in fire suppression occur infrequently, and the City's past accommodation of Cremeens is evidence of the City's ability to accommodate him in the future. The court finds that this evidence does not create an issue of fact as to whether fighting fires is an essential duty of a Fire Investigator.

That the situations requiring Fire Investigators to fight fires arise infrequently does not mean fighting fires is an inessential function of the Fire Investigator position. In *Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir. 1997), the Eleventh Circuit held that driving to crime scenes and collecting crime scene evidence were essential functions of a visually impaired police detective's job even though the types of investigations that required him to perform these duties had occurred infrequently in the past. *Id.* at 1527-28. The court reasoned that the plaintiff could not predict what types of crimes he may need to investigate in the future, and, even if a relatively small amount of his time was spent performing these functions, they were still essential

to the job.  *Id.*  Likewise,  neither Cremeens nor the City of Montgomery can predict with any

accuracy when Cremeens may be required to engage in fire suppression activities.  Although Fire

Investigators spend a relatively small amount of time fighting fires, which Cremeens concedes he

cannot do, the record indicates – and Cremeens has not proven to the contrary – that engagement

in fire suppression activities is essential to the Fire Investigator position when the need arises.

The court also rejects Cremeens' contention that the City's past accommodation of his

cardiomyopathy – allowing Cremeens to remain in the Fire Investigator position without

requiring him to fight fires – creates an issue of fact as to whether he was qualified for the Fire

Investigator position.  In *Holbrook*, the Eleventh Circuit held that, although the City of

Alpharetta, for quite some time, was able to accommodate the plaintiff with respect to the

essential functions that he conceded he could not perform, the city's decision to cease making

those accommodations did not violate the ADA.  *Id.* at 1528.  The Court reasoned that the City's

"previous accommodation may have exceeded that which the law requires" and the Court did not

want to discourage other employers from undertaking similar accommodations.  *Id.*  Similar to

the plaintiff's accommodation in *Holbrook*, Cremeens was accommodated by the City for almost

three years with respect to the essential function of fighting fires.  Because fire suppression is an

essential function of the Fire Investigator position, the City was not required, under the ADA, to

provide this accommodation.  As *Holbrook* establishes, the City's decision to provide this

accommodation with respect to an essential function does not require the City to provide the

same accommodation in the future.

The court notes that the issue of whether a particular function is an essential function of a

particular job is a fact-intensive inquiry.  In *Holbrook*, the Eleventh Circuit noted that its

13

"decision is informed by several specific factors, including the unique nature of police work, the particular realities of a small police department in which each of three detectives is expected to be able to respond to any situation, and the types of accommodations proposed by Holbrook." *Holbrook*, 112 F.3d at 1528 n.4.  The court's decision in this case is informed by several specific factors as well.  Specifically, the nature of firefighter work, similar to police work, requires employees to anticipate emergencies more than other occupations; the City has produced evidence showing that firefighting by Fire Investigators, while infrequent, is a reality in the department and has occurred in the recent past; Fire Investigators are specifically trained to fight fires and are provided equipment to do so; and, finally, the type of accommodation proposed by Cremeens – to be left as a Fire Investigator and not be able to fight fires under any circumstances that might arise – would force the City to eliminate an essential function of the job, which the ADA does not require.

 For the foregoing reasons, Defendant City of Montgomery's Motion for Summary Judgment is due to be GRANTED as to Cremeens' failure-to-accommodate claim.[4]

## B.  Cremeens' disparate impact claim under 42 U.S.C. § 12112(b)(6)

 Cremeens, in his Complaint, asserts that "the City's use of qualification standards to screen out individuals with disabilities not shown to be job-related and consistent with business necessity served to injure Mr. Cremeens."  (Doc. #1, Compl. ¶ 32.)  Based on this averment,

---

 [4] In reaching this conclusion, the court expresses no opinion as to the wisdom of the City's decision to withdraw its accommodation of Cremeens and force him to retire.  In fact, Cremeens has produced evidence showing that his forced retirement may have resulted from the questionable manner in which Chief Jordan handled Cremeens' retirement plans.  The court's decision merely concludes that the City, in making its decision not to continue to accommodate Cremeens by leaving him in the Fire Investigator position, did not violate the ADA.

14

Cremeens appears to be asserting a disparate impact claim against the City pursuant to 42 U.S.C. § 12112(b)(6).   Specifically, Cremeens appears to claim that the 2008 fit-for-duty evaluation, which is based on the guidelines of the NFPA Standard 1582, violated the ADA.[5]

A disparate impact claim "involve[s] employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (citation omitted).  Disparate impact claims are cognizable under the ADA. *Id.* at 53. The ADA prohibits an employer from employing a qualification standard that screens out or tends to screen out disabled persons. 42 U.S.C. § 12112(b)(6).[6]  *See also Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316 (11th Cir. 2009).  But the ADA also provides the employer an affirmative business-necessity defense to claims challenging the application of a qualification standard.  *Allmond*, 558 F.3d at 1316; 42 U.S.C. § 12113(a).  The City contends that this affirmative business-necessity defense entitles it to summary judgment as to Cremeens' disparate

---

   [5]  Cremeens also states in the Complaint that "[t]he City's requirement that Mr. Cremeens undergo medical emanations [sic] and or respond to medical inquiries not shown to be job-related and consistent with business necessity violated the ADA."  (Doc. #1, Compl. ¶ 31.)  This claim appears to challenge directly the City's fit-for-duty evaluation, pursuant to 42 U.S.C. § 12112(d)(4).  Because the implementation of the NFPA 1582 standards necessarily includes the performance of the medical evaluation, the court construes Defendants' Motion as applying to any claim that Cremeens may have stated regarding the performance of medical evaluations.

   [6]  Section 12112(b)(6) prohibits a covered entity from:

> using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity.

impact claim.[7]

To establish the business-necessity affirmative defense, an employer must prove that the pertinent qualification standard is job-related and consistent with business necessity.  *Allmond*, 558 F.3d at 1316-17.   The employer's burden is generally quite high, but it is "significantly lowered" when, like here, "the job clearly requires a high degree of skill and the economic and human risks involved in hiring an unqualified applicant are great . . . . "  *Id.* (citing *Hamer v. City of Atlanta*, 872 F.2d 1521, 1535 (11th Cir. 1989) (internal quotation marks omitted).  Once an employer demonstrates that the pertinent qualification standard is job-related and consistent with business necessity, the burden shifts to the plaintiff to offer a reasonable accommodation that would allow him to satisfy that standard.  *Id.* (citation omitted).

Cremeens appears to be challenging whether the NFPA 1582 qualification standards are job-related and consistent with business necessity.  The essential job tasks listed in Section 9.1.3 of NFPA 1582 outline the physical requirements for someone performing fire suppression and search and rescue operations:  crawling, lifting and carrying heavy objects, wearing a self-contained breathing apparatus, exposure to toxins and fumes, climbing six or more flights of stairs while wearing protective gear, rescue-dragging people weighing up to two hundred pounds, advancing water-filled lines, and climbing ladders. (Doc. #14-13, NFPA Standards.)

---

[7]  Because the court ultimately concludes that the City has established the affirmative business-necessity defense, the court need not determine whether Cremeens must demonstrate he is qualified to perform the essential function challenged under 42 U.S.C. § 12112(b)(6).  The Eleventh Circuit has not addressed the issue, and the issue has divided the circuits.  *See Allmond v. Akal Sec., Inc.*, No. 4:05-cv-96 (HL),  2007 WL 2904023, at *11 (M.D. Ga. Sept. 28, 2007) (noting the circuit split regarding whether a plaintiff challenging a standard under § 12112(b)(6) must prove that he is qualified as to the essential job function the standard addresses).

The court finds that the NFPA standards are job-related.  A Fire Investigator is trained for, equipped for, and expected to engage in fire suppression and rescue operations when the situation so requires.  The subject matter of the NFPA standards relate directly to the physical requirements necessary to perform fire suppression and rescue services.  The court also finds that the NFPA standards are consistent with business necessity.  The Montgomery Fire Department is responsible for providing fire suppression services to the citizenry of Montgomery.  Because the Department cannot predict when a fire will occur and whether a Fire Investigator will be needed to engage in fire suppression services, requiring Fire Investigators to be physically able to provide fire suppression services is necessary.  When considered in light of the tremendous harm that could result if a Fire Investigator could not perform the essential function of fire suppression at a given moment, the court finds this justification to be legitimate and consistent with business necessity.

Although Cremeens does not directly address the City's justification for the implementation of the NFPA standards, he appears to raise the same arguments that he raised in the context of whether firefighting is an essential function of the Fire Investigator job.  That is, he argues that the City's justification is based on events that are infrequent or may never occur.  The job of a Fire Investigator, however, requires that an individual be capable of fighting a fire if the situation so requires, even if these situations arise infrequently.  As the Eleventh Circuit has noted, the ADA does not "require[] employers to forgo a qualification standard 'until a perceived threat becomes real or questionable behavior results in injuries.'" *Allmond*, 558 F.3d at 1318 n.7 (citing *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999)).

Having determined that the City has met its burden in proving the affirmative business

17

necessity defense, the burden shifts to Cremeens to offer a reasonable accommodation that would

allow him to pass the NFPA standards.  Cremeens' only proposed accommodation, however, is

to ignore the requirement that Fire Investigators be able to engage in fire suppression activities.

That proposal is not reasonable because it would eliminate entirely a qualification that is job-

related and consistent with business necessity.  Therefore, the court concludes that the

affirmative business-necessity defense bars Cremeens' disparate impact claim.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Defendant City of Montgomery's Motion for Summary

Judgment (Doc. #13) is ORDERED GRANTED as to all claims.


Done this 9th day of August, 2010.


/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE